UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:14-CV-00099-TBR

EDDIE GENE VAUGHN, PLAINTIFF

v.

TIMOTHY HAWKINS, et al., DEFENDANTS

**Memorandum Opinion & Order**

This matter comes before the Court on two motions. The first is a motion by Defendants[1] for reconsideration of this Court's previous Order directing them to permit Plaintiff Eddie Vaughn, ("Plaintiff"), to view certain security camera footage. [DN 55.] The second is a motion by Defendants to strike. [DN 59.] These matters are ripe for adjudication and, for the reasons that follow, Defendants' motion to strike, [DN 59], is **GRANTED**, and Defendants' motion for reconsideration, [DN 55], is **DENIED**.

**A. Background**

This case arises out of events which transpired early on the morning of February 26, 2014 at the Kentucky State Penitentiary, ("KSP"). [DN 44, at 2-3.] That morning, Plaintiff, who is currently incarcerated at KSP, was subjected to a random cell search. [*Id.*] What happened during and after this cell search, though, is a matter of great contention in this case. Plaintiff alleges that Defendants destroyed his property unnecessarily and then proceeded to assault him. [*Id.*] Defendants claim that Plaintiff was subjected to a routine cell search, at which time certain

---

[1] "Defendants" will be used hereinafter to refer to Defendants Timothy Hawkins and Melvin O'Dell. Plaintiff has also sued James Cureington and an as-yet unknown corrections officer, "John Doe." Cureington has not yet entered an appearance in this lawsuit, and the John Doe corrections officer has not been identified, and so they will largely be excluded from the Court's analysis in this Memorandum Opinion.

1

items of contraband were found, and the only force used against Plaintiff was in response to his being combative while they were attempting to remove him from the cell block. [*Id.* at 3.]

On March 25, 2016, this Court ordered Defendants to "produce any and all video footage pertaining to the claims raised in the instant action, including video footage of Plaintiff's cell extraction and escort from his cell to the segregation unit." [DN 43, at 5.] Upon *in camera* review of the footage, the Court ordered that the footage would remain filed under seal, and that Defendants were to make available the video files so that Plaintiff could view them. [DN 54.] Defendants were further ordered to file a status report thereafter indicating that Plaintiff had been afforded access to the video. In response to that Order, Defendants filed the instant motion for reconsideration, seeking an order from this Court denying Plaintiff access to the video footage at issue. [*See* DN 55.] Plaintiff filed a response thereto, and Defendants filed a reply. However, Plaintiff then filed a "response" to Defendants' reply and, in addition to seeking reconsideration, Defendants have also moved to have Plaintiff's sur-reply stricken from the record. [*See* DN 59.]

### B. Defendants' Motion to Strike

The first motion at issue is Defendants' motion to strike Plaintiff's sur-reply from the Record as an unauthorized filing or, in the alternative, to permit Defendants to file a response thereto. Sequentially, this motion was made after Defendants' motion for reconsideration. However, because it affects the filings the Court will or will not consider in reaching its disposition on the motion to reconsider, the Court will address the motion to strike first.

#### 1. Legal Standard

Pursuant to Local Rule 7.1(g) in the Western District of Kentucky, motions are "submitted to the Court for decision…after the reply is filed, or the time for filing the response or reply has expired." In other words, after a party files a motion, "a party opposing a motion must

file a response within 21 days of service," and then the movant "may file a reply within 14 days of service of the response." LR 7.1(c). Neither the Local Rules of this jurisdiction nor the Federal Rules of Civil Procedure permit the filing of sur-replies as a matter of right. *See Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (discussing the standard for permitting a party to file a sur-reply). Instead, in order "to file a sur-reply the party must obtain leave of the court." *Eberhard v. Chicago Title Ins. Co.*, No. 1:11-cv-834, 2014 WL 12756822, at *2 (N.D. Ohio Jan. 8, 2014). District courts are afforded broad discretion in deciding whether to permit a party to file a sur-reply, the classic reason being "[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated." *Key*, 551 F. App'x at 264.

## 2. Discussion

In this case, Defendants seek to have Plaintiff's sur-reply stricken from the Record. The filing at issue was actually styled by Plaintiff as a "response," but because it was a "response" to Defendants' reply, the Court construes it as an attempted sur-reply. Defendants argue that, because Plaintiff's filing is properly construed as a sur-reply, he was not permitted to file it without prior leave of the Court and, because he sought no such leave, the "response" should be stricken from the Record. [DN 59, at 1.] In the alternative, Defendants seek authority to file a response to Plaintiff's sur-reply.

It is uncontested that Plaintiff did not move the Court to permit him leave to file the sur-reply, instead choosing merely to file the document as a matter of course. Thus, it is clear that Plaintiff had no authority to make the filing in the first place. However, even setting aside Plaintiff's failure to follow proper procedure, the Court finds no reason to permit the filing of a sur-reply in the first instance, and so will order the Clerk to strike the filing from the Record.

3

In their reply, Defendants largely restate the arguments previously made in their original motion, and provide responses to the arguments Plaintiff made in his response. [*See* DN 57.] There is nothing in Defendants' reply that this Court would consider to be "new submissions and/or [new] arguments," as contemplated by the Sixth Circuit Court of Appeals in *Key*, 551 F. App'x at 264. Moreover, in his response to Defendants' motion to strike, Plaintiff does not so argue. [*See* DN 60.] Instead, Plaintiff erroneously argues that Defendants, too, have made an improper filing with the Court. Namely, Plaintiff argues that Defendants' original reply to his response to Defendants' motion to reconsider "was unauthorized, and should have been [stricken] from the Record." [*Id.* at 2.] Essentially, Defendants filed their motion to reconsider, [DN 55], Plaintiff filed a response, [DN 56], and Defendants filed a reply thereto. [DN 57.] Plaintiff appears to believe that the reply was not authorized and so it should also be stricken. Of course, replies are authorized under Local Rule 7.1, and Defendants' reply was timely, and so Plaintiff's argument is without merit. Moreover, in his response to Defendants' motion to strike, Plaintiff presented no argument concerning the reasons for his failure to seek leave before filing a sur-reply, nor did he otherwise argue that a sur-reply was warranted under the circumstances. Consequently, the Court will order the filing [DN 58] stricken from the Record.

### C. Defendants' Motion for Reconsideration

The second motion at issue is Defendants' motion for reconsideration. [DN 55.] Specifically, Defendants wish for the Court to reverse course on its previous Order directing Defendants to permit Plaintiff to view certain security camera footage.

#### 1. Legal Standard

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez*

*v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see also Leelaneu Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 946 (6th Cir. 2004) (noting that "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."). The rule itself provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "[C]ourts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (internal quotation marks omitted).

## 2. Discussion

In the instant motion, Defendants have made no arguments that (1) there has been an intervening change in controlling law, or (2) new evidence is available necessitating reconsideration. Instead, Defendants argue that the Court should reconsider its previous order "to correct a clear error by the Court in issuing an order that could threaten the use of the current security camera system at KSP." [DN 55, at 2.] Therefore, the Court will only analyze the motion under the clear error/manifest injustice prong. *See Hotels.com*, 590 F.3d at 389.

Essentially, Defendants argue that it was clear error for the Court to order that Plaintiff be afforded access to the footage for two related reasons: first, Defendants have not used, and will not use or mention the security camera footage, thereby alleviating, in their view, any dangers of a due process violation by prohibiting Plaintiff the access he seeks; and second, prohibiting

Plaintiff from viewing the footage will remedy what Defendants construe as a threat to prison security should he be able to see things such as the camera position, its angles, and what areas it captures in its frame. [*See* DN 55 at 3.] Defendants argue that a reconsideration of the Court's previous order permitting Plaintiff to watch the footage would correct these alleged errors. The Court disagrees, and will deny Defendants' motion.

It should be noted at the outset that, as this Court's sister court in the Northern District of Ohio explained, in the context of Rule 59, a motion to reconsider "is not designed to give an unhappy litigant an opportunity to relitigate matters already decided, nor is it a substitute for appeal." *Sherwood v. Royal Ins. Co. of Am.*, 290 F. Supp. 2d 856, 858 (N.D. Ohio 2003) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)). In their initial response to Plaintiff's motion to show cause, Defendants presented many of the same points concerning Plaintiff's viewing of the video footage as they have in their motion to reconsider. [*See* DN 41.] Specifically, Defendants' argument in the initial response to Plaintiff's motion to show cause centered around the twin points of (1) the danger of giving inmates any information about the security cameras, and (2) the fact that Plaintiff does not have any "protected right" to view the footage. [*Id.* at 3.] Similarly, in the instant motion to reconsider, Defendants focus in large part on the dangers of affording Plaintiff, an inmate, access to KSP's security camera footage, as well as the fact that "inmates have no rights to view prison security video." [DN 55, at 5.] Although presented in a slightly different light, the arguments appear to be substantially similar.

However, even setting aside the issue of the motion rehashing already-decided matters, and otherwise relitigating the issue, the Court still finds no clear error in its previous decision. *See Hotels.com*, 590 F.3d at 389. Defendants cite to *Turner v. Safley*, 482 U.S. 78 (1987) in

support of their argument that KSP's policy of not permitting inmates access to security camera footage is reasonable and, relatedly, should not be encroached upon by the Court. [*See* DN 55, at 4-6.] Decided by the Supreme Court in 1987, *Turner* was a class action lawsuit brought by prisoners "challenging two regulations promulgated by the Missouri Department of Corrections." *Turner*, 482 U.S. at 78. One regulation curbed inmates' abilities to send mail to certain individuals, and the other allowed inmates "to marry only with the prison superintendent's permission," only given for "compelling reasons." *Id.* In ruling on this case, the Supreme Court noted four factors for analysis in "determining the reasonableness of the [prison] regulation at issue." *Id.* at 89. These are as follows: (1) "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* at 89-90.

While Defendants present a logical argument under the first prong, namely, that there is a rational connection between the policy of not allowing prisoners access to security camera footage and the aim of preventing violence, criminal activity, and general dangerousness in the prison, the Court is not convinced that Plaintiff has alternative means of effectively pursuing his case absent access to the footage he seeks. Defendants correctly point out that "inmates have no rights to view prison security video," but further posit that Plaintiff's due process rights are completely protected by the simple fact that he, as with other inmates, "ha[s] access to the Courts." [DN 55, at 5.] This oversimplifies the issue while simultaneously ignoring the impetus of Plaintiff's original motion to show cause. Viewing the security camera footage is the means to

the end, and not the end in and of itself. Stated differently, Defendants claim that Plaintiff "ha[s] access to the Courts," but one way of actually being afforded an opportunity to effectively pursue a claim in court is access to relevant information and evidence throughout the course of discovery. The security camera footage depicting the entire incident that is the subject of this case would certainly qualify as such.

Defendants also argue that, due to the fact that they "did not and will not use the security footage nor mention [its] content[s] in their motion for summary judgment, there is no danger of the court taking ex parte evidence, therefore, no danger that the plaintiff's due process rights will be violated." [DN 55, at 3.] Further, "[b]ecause the defendants will not use the video, the plaintiff will suffer no adverse consequences by not viewing the video…." [*Id.*] This line of argument completely ignores the risk of violating Plaintiff's rights by *not* affording him access to relevant evidence in pursuing his case. Moreover, it certainly does not follow that Plaintiff would suffer no adverse consequences should this Court prevent him from viewing the footage simply because Defendants have suggested that they will not use the footage themselves. Instead, the Court views Plaintiff's access to this footage, albeit temporary and in the presence of KSP officials, as a crucial part of discovery in this case, and one on which this Court will not lightly reverse course. Any usage or nonusage of the footage by Defendants does not affect Plaintiff's right of access to it at all, and the latter should not be considered to necessarily flow from the former.

To be sure, the safety and security of the inmates, staff, and institution are all important penological interests, and Defendants' desire to not have information concerning camera placement broadcasted publicly makes a great deal of sense. However, it does not follow, then, that prisoners should never be afforded access to such footage, especially when allegations have

been made that the video depicts excessive force being used by corrections officers on an already-restrained inmate. In short, the Court will not now reverse its previous decision. Defendants shall make available to Plaintiff for viewing the relevant security camera footage from February 2014 when he was extracted from his cell.

### D. Conclusion

For the reasons stated in this Memorandum Opinion, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Defendants' motion to strike, [DN 59], is **GRANTED**. The Clerk is hereby directed to strike Plaintiff's "response," [DN 58], from the Record.

2. Defendants' motion for reconsideration, [DN 55], is **DENIED**.

3. Defendants are **HEREBY ORDERED** to comply with this Court's previous Order to make the relevant security camera footage available to Plaintiff for viewing. Plaintiff is not entitled to possess the footage, but may view it under supervision.

**IT IS SO ORDERED.**

cc: Counsel of Record