UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:14-cv-00099-TBR

EDDIE VAUGHN,                                                                                      PLAINTFF

V

LT HAWKINS, ET AL.,                                                                           DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants', Lt. Hawkins and Officer O'Dell, Second Motion for Summary Judgment (R. 76). Proceeding *pro se*, Plaintiff, Eddie Vaughn, has responded. (R. 81). Defendants have replied (R. 83), and this matter is now ripe for adjudication. For the reasons that follow, Defendants' Second Motion for Summary (R. 76) is **DENIED**.

BACKGROUND

Eddie Vaughn is an inmate at Kentucky State Penitentiary (KSP). (R. 1). He is suing Defendants Lt. Hawkins, Officer J. Cureington, Officer O'Dell, and Officer John Doe—all KSP prison officials—in their individual capacities. (R. 1). The Court construes Vaughn as alleging an excessive force claim under the Eighth Amendment's Cruel and Unusual Punishment Clause and a retaliation claim under the First Amendment. (R. 1; R. 6). The relevant events are disputed.

Vaughn alleges that on February 26, 2014, O'Dell and Doe woke him between 4:00 and 5:00 AM so that they could shakedown his cell. (R. 1 ID # 4). The Officers cuffed Vaughn's hands behind his back and then, according to Vaughn, destroyed his property. (R. 1 ID # 4). O'Dell and Doe then leave for roughly ten minutes. (R. 1 ID # 4). O'Dell comes back and tells

Vaughn that he is going to the hole. (R. 1 ID # 4). At this point Vaughn says he asked to talk to a lieutenant or captain. Vaughn contends that Hawkins then comes to his cell and curses at him while he was having his hands cuffed behind his back. (R. 1 ID # 4). According to Vaughn, Hawkins and O'Dell then twist his arms behind his neck, throw him on the floor, and start kicking him in his right side. (R. 1 ID # 4). By Vaughn's account, Officer Cureington then joins Hawkins and O'Dell and the three of them start dragging him away. (R. 1 ID # 4). As they are dragging him, the three Officer's push Vaughn up against the wall, putting a "hole in the left side of [his] head." (R. 1 ID # 5). Cureington then allegedly jumps on Vaughn's back and punches him. (R. 1 ID # 5). All three officers, as stated in Vaughn's Complaint, then beat him and carry him away from the other inmates so the inmates would not witness the Defendants beat Vaughn further. (R. 1 ID # 5).

Vaughn alleges in his verified Complaint that the beating continued once away from the other prisoners. (R. 1 ID # 5). He states that he was stripped down to his shorts and thrown back on the concrete to be kicked and kneed again by the Officers. Vaughn alleges this beating "cause[d] a big hole" in his left knee, lip, and right toe. (R. 1 ID # 5).

From here, Vaughn alleges that he is dragged to the hole and placed in a restraint chair so tightly he can barely breath. (R. 1 ID # 5). Once in the restraint chair, Vaughn states he is tortured for having urinated and bled on himself while onlookers laugh. (R. 1 ID # 5). Vaughn also alleges that doctors placed sticks in the hole in his head and that from the restraint chair he was dragged up multiple flights of stairs and thrown in a naked cell for three days. (R. 1 ID # 5). Vaughn states that there were witnesses, the incident was on camera, and that his body spoke for itself regarding the beating. (R. 1 ID # 5).

Before the alleged beating, Vaughn claims that he wrote Warden White a letter in which

he complained about officers calling him slave nicknames and harassing him. (R. 1 ID # 6). After the beating, in March of 2014, Vaughn states that Hawkins came to his cell and told him that he "should learn how to spell his name correct[ly]" and that he did not care if Vaughn filed a complaint against him because "that would not be the first time an inmate filed on them for beating on inmates and won[']t be the last time either." (R. 1 ID # 6). Vaughn alleges further that since filling the instant lawsuit, Officer O'Dell has harassed him and told lies that have resulted in him being "thrown in the hole." (R. 6 ID # 28). Vaughn also alleges that Hawkins has "nigger tattooed on his arm." (R. 1 ID # 6).

Defendants' account differs from Vaughn's dramatically. They admit that force was used against Vaughn, but they contend that the force was reasonable and in response to Vaughn's behavior during a routine cell search. (R. 76-1 ID # 485). According to the Defendants, they recovered some contraband after searching Vaughn's cell. (R. 76-1 ID # 479). When Hawkins ordered Vaughn to approach the cell door to be cuffed, Vaughn replied with a disrespectful expletive. (R. 76-1 ID # 485). After eventually being cuffed, Vaughn started yelling these "white boys are killing me" while being escorted down the walk to segregation. (R. 76-1 ID # 480). The yelling woke other inmates on the walk. (R. 76-5 ID # 499). They too began yelling. (R. 76-5 ID # 499). According to the Defendants, Vaughn then started to resist the escort, pulling away from the them. (R. 76-1 ID # 480). To regain control, the Defendants placed Vaughn against the wall. (R. 76-1 ID # 488). While placing Vaughn against the wall, he hit his head on the cell bars, sustaining a cut on his head. (R. ID 76-1 # 488). Vaughn continued to resist and refused to walk on his own, causing Vaughn and the Defendants to fall to the ground at least twice. (R. 76-5 ID # 499). Finally, Vaughn pulled O'Dell's radio microphone off, at which point Hawkins radioed for back up. (R. 76-5 ID # 499). When back up arrived, the Defendants placed Vaughn on the

ground. (R. 76-5 ID # 499). Hawkins told Vaughn if he continued to resist, he would be carried to segregation. (R. 76-5 ID # 499). Vaughn stopped resisting. (R. 76-5 ID # 499).

Before the Court is Defendant's Second Motion for Summary Judgment. (R. 76). Their first was denied by the Honorable Judge Stivers for the Defendants' failure to support their argument with properly authenticated evidence. (R. 44 ID # 354-358). Judge Stivers was also reluctant to grant summary judgment before viewing video evidence alleged by Vaughn to have captured the events occurring on February 26, 2014. (R. 44 ID # 356).

Since that denial, Defendants have been ordered to produce "any and all video footage pertaining to the claims raised in the instant action, including video footage of Plaintiff's cell extraction and the escort from his cell to the segregation unit." (R. 43). The Defendants have complied. (R. 45; R 51). Two discs have been filed with the Court. One disc contains video footage from a KSP security camera (KSP Security Footage). The other contains hand-held footage documenting Vaughn's placement in, and removal from, the restraint chair (KSP Hand-held Footage). The Hand-Held Footage also documents Vaughn receiving medical attention. Both Discs were filed under seal, and the Court has viewed the video footage.

STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material

fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

DISCUSSION

In considering the Defendants' Second Motion for Summary Judgment, the Court will first address Vaughn's excessive force claim, then Vaughn's retaliation claims, and finally the Defendants' assertion of qualified immunity.

A. There Remains a Genuine Dispute as to a Material Fact Concerning Vaughn's Excessive Force Claim.

Prisoners are protected from the use of excessive force by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). But not all force is excessive. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) ("[N]ot every intrusion upon a prisoner's bodily integrity will rise to the level of an Eighth Amendment violation."). In

determining whether force is excessive, courts must decide "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). The "good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parrish*, 800 F.2d at 604. In the context of a prison, decisions to use force are often "necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Whitley*, 106 S. Ct. at 1084. Therefore, in making such a determination, courts must be careful to consider the nature of the prison setting and not unreasonably second guess prison officials' actions taken in the heat of the moment. *Parrish,* 800 F.2d at 604. (citing *Whitley*, 106 S. Ct. at 1084-85).

However, case law makes it clear that striking a subdued inmate or slamming him into concrete while he remains defenseless with his hands cuffed behind his back is both a violation of the Eighth Amendment, and "repugnant to the conscience of mankind." *Smith v. Mensinger*, 293 F.3d 641, 649-50 (3d Cir. 2002) (citing *Hudson*, 503 U.S. at 10); *see also Cordell v. McKinney*, 759 F.3d 573, 585-86 (6th Cir. 2014); *Burgess v. Fischer*, 735 F.3d 462, 474-75 (6th Cir. 2013); *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988). With these considerations in mind, the Court turns to Defendants' Second Motion for Summary Judgment.

Defendants claim that Vaughn's version of events is completely unsupported, pointing to his minimal injuries, O'Dell's and Hawkins's affidavits, and the video evidence filed with the Court.[1] (R. 76-1 ID # 486-487). The Court disagrees.

---

[1] The Defendants also point to prison medical records and disciplinary proceedings, but—again—fail to properly authenticate them pursuant to Federal Rule of Civil Procedure 56. Therefore, the Court is—again—precluded from considering them. *See Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993); *see also* (R. 44 ID # 354) (Judge Stivers refusing to consider the medical records and disciplinary records because they were not properly authenticated).

First, the Court notes that the video evidence factually discounts much of Vaughn's story. Vaughn claims that before he was placed against the wall outside of his cell, the Officers twisted his arms behind his neck, threw him on the ground, and started kicking him. The Security Footage proves this never happened. (KSP Security Footage, filed under seal).

Vaughn also claims that he was pushed up against the wall while being escorted to segregation. The Security Footage proves this, in fact, occurred. (KSP Security Footage, at 31:12, filed under seal). But this force was a reasonable response to Vaughn being uncooperative and trying to pull away from Officer O'Dell and Lt. Hawkins. (KSP Security Footage, at 31:10, filed under seal). As such, when Vaughn was placed against the wall, which resulted in the wound to the left side of his head, the Officers' use of force was not excessive, but instead necessary to restore order and regain control of the situation. Therefore, when Vaughn was placed against the wall his Eighth Amendment rights were not violated.

Next, Vaughn alleges that after he was placed against the wall, Officer Cureington jumped on his back and started punching him while the other Officers beat him. The Security Footage proves this did not happen. (KSP Security Footage, at 31:12, filed under seal). After, Vaughn was placed against the wall, the Defendants continued to escort him to segregation—no one jumped on his back or beat him directly after he was placed on the wall. (KSP Security Footage, at 31:12-31:41, filed under seal).

Once he arrived at the restraint chair, Vaughn alleges he was placed in the chair so tightly that he could barely breath. The Hand-Held Video shows this did not happen. (KSP Hand-Held Video Footage, Placement in Restraint Chair Pt. 1, at 5;59-11:05, filed under seal; KSP Hand-Held Video Footage, Placement in Restraint Chair Pt. 2, at 0:01-7:30, filed under seal). While the chair is evidently uncomfortable, it is necessarily intended to be. At no point is Vaughn so tightly

7

secured that he could not breath. Vaughn also alleges that he was tortured while in the chair. This too never happened. (KSP Hand-Held Video Footage, Placement in Restraint Chair Pt. 1, filed under seal; KSP Hand-Held Video Footage, Placement in Restraint Chair Pt. 2, filed under seal)

Vaughn's claim that doctors placed sticks in his head wound is similarly discounted by the Hand-Held Video. (KSP Hand-Held Video Footage, Medical Attention, filed under seal). Indeed, the Hand-Held Video shows that Vaughn's wounds were promptly and appropriately attended to. (KSP Hand-Held Video Footage, Medical Attention, filed under seal). His wounds were cleaned and bandaged, and the the blood was cleaned off his face, head, and neck. At no point were sticks of any kind placed in his wounds. (KSP Hand-Held Video Footage, Medical Attention, filed under seal).

Finally, Vaughn claims that he was dragged up flights of stairs and thrown into a cell naked. This did not happen. Vaughn was walked up stairs and into a cell. (KSP Hand-Held Video Footage, Removal from Restraint Chair, filed under seal). He had shorts on at the time. (KSP Hand-Held Video Footage, Removal from Restraint Chair, filed under seal)

But the video evidence does not refute all of Vaughn's story. Indeed, the video evidence may support part of Vaughn's story. The Security Footage only captures the first portion of Vaughn's walk to segregation, in which he is placed against the wall. (*See generally* KSP Security Footage, filed under seal). But by the Defendants' own account Vaughn continued to resist. (R. 76-5 ID # 499; R. 76-6 ID # 502). Hawkins's affidavit states that he had to call backup to subdue Vaughn. (R. 76-5 ID # 499). O'Dell's and Hawkins's affidavits both state that at some point Vaughn grabbed O'Dell's hand-radio. (R. 76-5 ID # 499; R. 76-6 ID # 502). Neither of these events are captured on the KSP Security Footage or the KSP Hand-Held Footage. Therefore, by the Defendants' own account, the Court must assume there to be a time gap

between where the Security Footage ends and where the Hand-Held Video Footage starts. What happened during this gap is disputed. Following the Defendants alleged timeline, Vaughn pulled off O'Dell's hand-radio, and Hawkins had to call in other officers to assist in subduing Vaughn. (R. 76-5 ID # 499; R. 76-6 ID # 502). But according to Vaughn's alleged timeline, the gap coincides with when Vaughn alleges he was dragged away from inmates and off camera to be beaten. (R. 1 ID # 5; R. 81 ID # 515). It's during this time that Vaughn contends he suffered wounds to his knee, lip, and toe. (R. 1 ID # 5). Contrary to the Defendants' position and Hawkins's affidavit, Vaughn suffered a wound to his knee at some point between being extracted from his cell and placed in the restraint chair. The Hand-Held Footage shows a wound on Vaughn's Knee being dressed after he is placed in the restraint chair. (KSP Hand-Held Video Footage, Medical Attention, filed under seal).

The Court notes that it cannot dismiss part of Vaughn's story simply because the rest is fabricated. Rather, the fact that most of Vaughn's story is demonstrably false is a fact to be considered by the jury in assessing Vaughn's credibility. It is not the Court's place to judge Vaughn's credibility or weigh the evidence. *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011) (overturning a district court's grant of summary judgment because the court made an improper credibility judgment in adopting a prison officials version of events over an inmate's regarding an excessive force claim). Therefore, the Court finds Vaughn's allegation[2] concerning the beating that took place away from inmates and off camera sufficiently supported by the gap in video surveillance and the knee wound so as to create a factual dispute that must be resolved by a jury.

Defendants argue that Vaughn's excessive force claim should fail as a matter of law

---

[2] The allegations in Vaughn's verified Complaint carry the same weight as if in an affidavit because he signed the Complaint under the penalty of perjury. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2009).

because his wounds are minimal. (R. 76-1 ID # 487). The Defendants' argument fails for two reasons. First, the Defendants make this argument only regarding Vaughn's head wound. (R. 76-1 ID # 488). They contend this is his only wound. (R. 76-1 ID # 488; R 76-5 ID # 500). As already discussed, it is not.

Second, the argument fails even if applied to the knee wound. The fact that Vaughn's knee wound is minimal is irrelevant if it was the result of force that is "repugnant to the conscious of mankind." *Hudson*, 503 U.S. at 7-10 ("The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, *provided that the use of force is not of a sort repugnant to the conscience of mankind.*") (emphasis added). The force alleged by Vaughn to have caused the knee wound—being beaten while subdued and cuffed behind his back—is, in fact, repugnant to the conscious of mankind. *Id.* Whether such force occurred, as already discussed, is a matter for the jury to decide. Thus, Defendants' argument fails. Summary judgment on Vaughn's excessive force claim is denied.

B. There Remains a Genuine Dispute as to a Material Fact Concerning Vaughn's Retaliation Claims.

Vaughn brings a First Amendment retaliation claim against Defendants. To be successful Vaughn must establish the following: (1) he was "engaged in protected conduct; (2) an adverse action was taken against the him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Typically, "the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). "[U]nless

the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury."
*Id.*

The Court construes Vaughn as bringing two separate retaliation claims. First, the Court construes Vaughn as alleging that the cell search occurring on February 26, 2014 was retaliation for writing the letter to Warden White in which he complains of being called "slave nicknames." Next, the Court construes Vaughn as alleging that O'Dell retaliated against him for filing the instant law suit by harassing him and telling lies that have resulted in Vaughn being placed in solitary confinement.

Defendants respond to Vaughn's first retaliation claim by arguing, as they did in their first motion for summary judgment, that Vaughn's claim fails because he was not engaged in constitutionally protected conduct while being uncooperative and violating prison disciplinary policies during the cell search and subsequent escort to segregation. (R. 33 ID # 198-197; R 76-1 ID # 484). This argument is misguided. As Judge Stivers already pointed out to the Defendants, the protected conduct is not the cell search; Rather, the cell search, and events that took place after, is the alleged retaliation. The protected conduct is Vaughn's writing the letter to Warden White. (R. 44 ID # 357). Therefore, this argument—for the second time—fails.

Defendants argue that Vaughn's second claim fails for two reasons. First, Vaughn's allegation is unsupportable because the Justice Cabinet's Office of Legal Services did not receive Vaughn's Complaint in the instant lawsuit until after the alleged harassment took place. (R. 76-1 ID # 484). Therefore, according to the Defendants, O'Dell could not have retaliated against Vaughn for the instant lawsuit on the alleged date because on that date O'Dell had no knowledge of the instant lawsuit. (R. 76-1 ID # 484). Second, Vaughn provides no proof that he exhausted his administrative remedies. Neither reason defeats Vaughn's claim. (R. 76-1 ID # 484).

First, just because the Justice Cabinet's Office of Legal Services did not receive Vaughn's Complaint prior to the alleged harassment, does not mean that O'Dell was unaware of it. Vaughn could have told other inmates about filling the lawsuit, who in turn told O'Dell. Vaughn could have told O'Dell himself. In his Response to Defendants' Second Motion for Summary Judgment, Vaughn claims that he had filed numerous grievances concerning O'Dell's alleged harassment. (R. 81 ID #528). Mention of the lawsuit could have been in a grievance and eventually made its way back to O'Dell. The Court will not exhaust every possible way in which knowledge of the instant lawsuit could have gotten back to O'Dell prior to the Justice Cabinet receiving the Complaint on October 1, 2014. Suffice it to say the possibilities are numerous. Therefore, the Justice Cabinet receiving the Complaint on October 1, 2014, prior to the date of the alleged harassment by O'Dell, does not defeat Vaughn's retaliation claim.

Second, The Burden is on the Defendants to prove that Vaughn has not exhausted his administrative remedies—the burden is on not on Vaughn to prove that he has. The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). However, "[i]n a claim by a prisoner, failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel Cty.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 204, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). Defendants have provided no proof that Vaughn has failed to exhaust his administrative remedies. Because their argument is unsupported, it fails. Summary Judgment on Vaughn's retaliations claims is denied.

C. Defendants are Not Entitled to Qualified Immunity on Summary Judgment.

Defendants argue that they are entitled summary judgment on Vaughn's excessive force claim based on qualified immunity. (R. 76-1 ID # 488-491). They are not.

Pursuant to the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Determining whether defendants are entitled to qualified immunity involves two questions: First, based on applicable law and the facts viewed in the light most favorable to the plaintiff, has a constitutional violation occurred? *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002). Second, if the answer to the first question is yes, was the constitutional right "clearly established" at the time of violation. *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). To be "clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bell*, 308 F.3d at 602. In other words, "the unlawfulness [of the action] must be apparent." *Id*.

As discussed, there remains a factual dispute as to whether the Defendants used excess force against Vaughn in violation of his Eighth Amendment rights. Furthermore, the Court finds that the right to be free from excessive force, as alleged here, is a clearly established right. *See, e.g., Cordell*, 759 F.3d at 585-86. Therefore, the Defendants are not entitled to qualified immunity on summary judgment.

CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

**IT IS HEREBY ORDERED** that Defendants' Second Motion for Summary Judgment is hereby **DENIED**.

A **telephonic conference** is set **November 20, 2018 at 10:00 a.m. CDT**. Counsel and plaintiff must call 1-877-848-7030 then give the Access Code 2523122 and #, then when prompted press # again to join the call.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

November 5, 2018

cc.
Eddie Gene Vaughn
182952
KENTUCKY STATE PENITENTIARY
266 Water Street
Eddyville, KY 42038
PRO SE